NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JANNA G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, K.G., A.G., *Appellees*.

No. 1 CA-JV 20-0281
FILED 4-6-2021

Appeal from the Superior Court in Maricopa County
No. JS20087
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

**¶1**        Janna G. appeals the superior court's order terminating her parental rights to her children, K.G. and A.G. ("the children"). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**        Janna has a more than twenty-year history of abusing drugs. She began using heroin and methadone in her late teens, continued using one or the other as an adult, and used marijuana and benzodiazepines in combination with heroin and methadone. K.G. was born in 2012 and A.G. was born in 2014. Both children were born exposed to substances in utero.

**¶3**        In April 2016, the Department of Child Safety ("DCS") received multiple reports that Janna was using methamphetamine, asking neighbors for drugs, and neglecting the children. Janna was evicted from her apartment in May 2016, and reportedly was living in her car with the children. A DCS case manager contacted Janna in August 2016. The case manager observed that Janna was under the influence. She lied to the case manager, claiming to have been clean from heroin since 2009.[1] Janna refused to take a drug test, and although she told the investigator she had sought methadone treatment in the past she refused to sign a release to allow DCS to obtain her methadone treatment records.

---

[1]        In June 2016 Janna went to Thunderbird Treatment Center ("TTC") seeking to re-enter its methadone maintenance program. During intake Janna admitted she had been using heroin for thirteen years and that she had been "using every benzodiazepine in the World." She admitted to having used heroin the day before the intake appointment. TTC performed a drug screen that day which was positive for opiates. The TTC LPN discussed the risks of taking methadone together with benzodiazepines with Janna, and reviewed TTC's benzodiazepine policy with her.

**¶4**        DCS removed the children from Janna's care and filed a dependency petition.  In August 2016 Janna submitted a hair follicle test which was positive for marijuana and opiates, and a urinalysis test that was positive for marijuana.  The superior court found the children dependent and DCS put reunification services in place.

**¶5**        In December 2017, after Janna appeared to be making progress, DCS returned A.G. to her care and assigned a family reunification team.  K.G. remained in foster care.  The next month, police were called when four-year-old A.G. was found wandering alone outside in a parking lot near a busy street, and DCS again removed A.G. from Janna's care.  DCS then discovered that Janna had been mixing Xanax (for which she did not have a prescription) with her prescription methadone.

**¶6**        For more than three years, DCS offered Janna reunification services, including substance abuse testing and treatment, parent aide services, parenting classes, community-based psychiatric services, individual counseling, dialectical behavioral therapy ("DBT"), psychological evaluations, supervised visitation, therapeutic visitation, a best interests evaluation, and transportation.  DCS invited her to attend the children's medical appointments and monthly child and family team meetings.  Janna participated in services but was resistant to therapeutic treatment and minimized her drug use.  She continued to mix benzodiazepines or marijuana with her methadone, which caused impairment, and was unable to stop using multiple drugs for more than a few weeks at a time.  She also resisted DCS' attempts to obtain records from her service providers.

**¶7**        On April 25, 2018, Janna tested positive for methamphetamines, methadone, and benzodiazepines.  Around the same time (on or about May 1, 2018), Janna accidentally sent a text message to her DCS case aide asking someone for "clear," a street term for methamphetamines.  The case aide also received texts from Janna stating, "Hello people Hello please call I have Stuff for u," and several wherein she offered individuals marijuana edibles.  Janna's cell phone contact name appeared as "Deena Xanax" and her photograph appeared next to the text messages.

**¶8**        In July 2018, Janna's outpatient drug treatment provider, TERROS, recommended that she enter residential treatment, noting her lack of progress over the past two years.  DCS repeatedly asked Janna to follow TERROS' recommendation for residential treatment, but she refused to do so.  That same month, Janna's latest methadone clinic told DCS that

the clinic had been unaware that (1) she had an extensive methadone and benzodiazepine history, and (2) other doctors had prescribed her opiates.

¶9        Between July and October 2018, Janna lived at five different homes.  In August 2018 she reported that she had stopped using medical marijuana but in October 2018 tested positive "for levels . . . well above the cut off."  Janna admitted to DCS that when she used THC together with methadone her functioning was impaired.  During supervised visits with the children in 2018, Janna appeared drowsy and under the influence of drugs on multiple occasions.  In addition, she was overly emotional during visits, causing the children to cry, despite constant reminders from case aides that her behavior was "not fair to [the children]" because it caused them "unneeded stress."  Janna often struggled with redirecting K.G., and often allowed "an excessive amount of screen time for [the] children that encompasse[d] most of the visitation time."

¶10        In June 2019, DCS filed a petition to terminate Janna's parental rights to the children pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3) (chronic substance abuse) and 8-533(B)(8)(c) (fifteen months' out-of-home placement).  Between June and August 2019, Janna tested positive for THC and methadone seven times, and tested positive for THC, methadone, and benzodiazepines on June 21, 2019.

¶11        In July 2019, the ongoing DCS case manager attended a supervised visit between Janna, K.G.'s father, and the children and observed that Janna appeared to be "[u]nder the influence . . . or hindered in some sort of capacity."  Janna "was not clear headed, her eyes were half closed, her speech was slow, and her hands were shaking."  In December 2019, the case manager discussed Janna with K.G.'s father, who told the case manager he agreed with her assessment that Janna seemed unable to maintain sobriety for more than two weeks at a time.  At the time of the termination adjudication hearing, Janna's methadone dose had increased from 15 milligrams to 105 milligrams.  In addition, she admitted that she was still using marijuana about five times a month and was still taking a benzodiazepine, Klonopin, despite TERROS' recommendation to stop.

¶12        After a six-day termination adjudication hearing, the superior court terminated Janna's parental rights on the grounds alleged in the petition.  Janna timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

I.      Fifteen Months' Out-of-Home Placement

**¶13**         Janna argues that insufficient evidence supported the superior court's finding that termination was warranted under A.R.S. § 8-533(B)(8)(c).  The superior court may terminate parental rights under A.R.S. § 8-533(B)(8)(c) if DCS has made diligent reunification efforts, the parent has been unable to remedy the circumstances causing the parent's child to be in an out-of-home placement for fifteen months or longer, and "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." We view the evidence and the reasonable inferences to be drawn from it in the light most favorable to affirming the superior court's order.  *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).  We will not reverse the superior court's order unless reasonable evidence does not support the superior court's factual findings.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

**¶14**         The children had been in an out-of-home placement for more than three years at the start of the termination adjudication hearing.  Janna argues that she remedied the circumstances causing the children to be in an out-of-home placement because she consistently participated in services and demonstrated behavioral changes during the dependency.  She also argues that DCS failed to provide her with appropriate reunification services.

**¶15**         In making a determination that a parent has been unable to remedy the circumstances causing the child to be in an out-of-home placement, we construe those circumstances to mean the circumstances existing at the time of the termination that prevented a parent from appropriately providing for the parent's child.  *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007); *see also Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 17, ¶ 26 (App. 2019) (court must consider "*both the origin [of the dependency] and any cause arising during the dependency*").

**¶16**         DCS makes diligent efforts to provide reunification services when it provides a parent with the time and opportunity to participate in programs designed to help the parent become an effective parent.  *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).  DCS need not provide "every conceivable service" or ensure that the parent actually participates in the services offered.  *Id.*  Nor is it required to provide a parent with unlimited time to take positive steps toward recovery.  *Maricopa Cnty.*

*Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994). DCS is not required to undertake futile reunification efforts and is required to undertake only those measures with a reasonable prospect of success. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999).

¶17 Here, the superior court found that although DCS made diligent efforts to provide reunification services to Janna, she was unable to remedy the circumstances causing the children to be in an out-of-home placement—her drug use. The court also found that Janna's housing had been unstable over the course of the dependency, and that at the time of the termination adjudication hearing she did not have stable housing or a stable income. Reasonable evidence supports the court's findings.

¶18 Dr. Stephanie Leonard, a psychologist, evaluated Janna in February 2020 and diagnosed her with paranoid personality disorder, unspecified anxiety disorder (provisional), opioid use disorder, cannabis use disorder, and benzodiazepine use disorder (provisional). She opined that even though Janna had engaged in services, the prognosis that Janna would be able to demonstrate minimally adequate parenting skills was "poor" in light of her long history of drug abuse. Further, Janna's prognosis was poor because she "fails, even after the amount of time of DCS involvement, to accept responsibility for the reason for DCS involvement, which may be an indicator that she has difficulties accepting responsibility for her behaviors, substance abuse, and thinking patterns." Dr. Leonard testified that Janna had failed to make significant progress, noting that issues identified by a previous evaluator as problematic, such as her lack of insight into her behaviors and her minimizing and failure to accept responsibility for her actions, still existed. Given Janna's lack of progress, Dr. Leonard believed she "would still need a lot more time to get to a place where her ability to function won't impact the children in a negative light." Dr. Leonard opined that DCS had provided Janna with appropriate reunification services, including DBT therapy to help her develop coping skills and increase her mood regulation and impulse control.

¶19 Dr. Al Silberman, a psychologist who evaluated Janna in December 2016, also testified. Dr. Silberman reviewed DCS' court reports and Dr. Leonard's more recent psychological evaluation. Dr. Silberman agreed with Dr. Leonard's assessment that Janna had not made substantial progress. He explained, "[Janna] still seems to be out of it at times. That appears to be [the result of] a type of drug use or overuse of methadone or other types of drugs. . . . [S]he may love her children, but they don't seem to be put first. The drugs seem to be first." Dr. Silberman found Janna's mixing of prescription benzodiazepines with benzodiazepines she obtained

without a prescription "very concerning," because it indicated she was "looking to be stoned." And even though Janna had a prescription for medical marijuana, Dr. Silberman also found Janna's use of marijuana in conjunction with methadone and benzodiazepines concerning. Dr. Silberman testified that Janna's potential for being able to parent in the foreseeable future was "highly question[able]."

**¶20** Dr. Steven Bennett, who completed a bonding and best interests assessment, similarly opined that it was unlikely Janna would "continue to make any significant progress towards improving her ability to be a caregiver for [the children]." DCS case manager Nora Al Nasser testified that Janna had failed to demonstrate sobriety and had not made substantial progress towards reunification despite the length of the dependency and the many services she had received.

**¶21** Janna completed a year of DBT therapy about a year before the termination adjudication hearing. She now argues DCS failed to provide her with appropriate reunification services solely because it "failed to continue to offer . . . DBT therapy." DCS argues she waived this argument by failing to raise the issue before the termination adjudication hearing. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 349, ¶ 19 (App. 2013); *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178-79, ¶¶ 16-18 (App. 2014) (any claim that DCS is failing to provide appropriate reunification services must be timely raised in the superior court or the issue is waived). Janna does not assert that she ever requested, before the termination adjudication hearing, that DCS provide her with additional DBT therapy. And Janna's DCS case manager testified that Janna had received DBT therapy but that after it ended, she resisted his efforts "to get her back into therapy. It was a challenge . . . ." Although Janna testified that she would have participated in additional DBT therapy had it been available, the superior court was not required to find her testimony credible.[2] In addition, Dr. Leonard, who was familiar with all of the services provided to Janna, including one year of DBT therapy, concluded that the reunification services were appropriate. Sufficient evidence supports the superior court's finding that DCS made diligent efforts to provide reunification services.

---

[2] Indeed, the superior court found that Janna's "repeated false statements on critical issues to this court under oath and to her service providers render her wholly incredible. The court declines to rely upon Mother's self-serving testimony at trial to any degree."

**¶22** Because sufficient evidence supported the superior court's finding that termination was warranted pursuant to A.R.S. § 8-533(B)(8)(c), we need not consider Janna's challenge to the alternate ground of chronic substance abuse. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

II. Best Interests

**¶23** Next, Janna argues the superior court erred by finding that termination of her parental rights was in the children's best interests. We do not reweigh the evidence and will affirm the superior court's factual findings if supported by reasonable evidence. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97, ¶ 6 (App. 2016). "Although fundamental, parental rights are not inviolate; a court may still sever those rights if it finds clear and convincing evidence of one of the statutory grounds for severance, and also finds by a preponderance of the evidence that severance is in the best interests of the child[]." *Id.* at 98, ¶ 7. Termination is in a child's best interests if the child would "derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004). A current adoptive plan is a well-established affirmative benefit to a child. *Id.*

**¶24** Reasonable evidence supported the superior court's best interests finding. The children were in an adoptive placement that wished to adopt them. The placement was meeting all of the children's needs, including K.D.'s special needs as a result of his autism diagnosis. Janna argues she is bonded with the children and she is able to meet their needs. Although the bond between a parent and child is a factor in assessing best interests, it is not dispositive. *Dominique M.*, 240 Ariz. at 98, ¶ 12. "Even in the face of such a bond, the [superior] court is required to evaluate the totality of circumstances and determine whether severance is in the best interests of the children." *Id.* at 99, ¶ 12. The superior court considered the totality of the circumstances and found that termination was in the children's best interests. Reasonable evidence supports that finding.

## CONCLUSION

¶25        For the following reasons, we affirm the superior court's order terminating Janna's parental rights to the children.



AMY M. WOOD • Clerk of the Court
FILED:    AA